Derbigny, J.
delivered the opinion of the court. The act entitled “an act, to determine the form and effects of the election of domicil, with regard to promissory notes made in favour of the banks of this state, and for other purposes,” approved in March 1818, has provided in favour of the banks, a summary remedy in certain cases. The present defendant, being sued in that summary way, pleads that his debt is not one of those against which this particular mode of compulsion has been established.
The suit is brought upon a note which the defendant subscribed in May, 1818, to one John Nelder : the note was payable in March, *142 1820, and after having passed through several hands, was discounted at the office of discount and deposit of the Bank of the United States, in September 1819. On its becoming due, it was protested for non-payment, and the bank now pray for a judgment, and an order of seizure and sale of the property of the maker, under the following words of the abovementioned act. "Be it enacted, that when banks shall lend money on a note, or on a special mortgage, they may obtain, to wit, with regard to a note, on motion being made before any court of competent jurisdiction, a judgment and an order of seizure and sequestration,” &c.
East’n District.
May, 1820.
This departure from the ordinary rules of proceeding, in favour of banks, is said to be intended not merely for cases where application is made to a bank for a loan, but for all cases where banks chose to discount notes at the request of the holder ; in other words, this remedy is said to be given not merely against the borrower and his co-obligors, but against any person who may have subscribed and endorsed a note of hand, no matter for what cause. Can this be a sound construction of this law ? Can the legislature have intended to subject the subscriber or the endorser, of no matter what note, to the contingency of being sued in this man *143 ner, should his note find its way into one of the banks ?
We think that the legislative act, here alluded to, has done no such thing. It has established particular rules for the case where banks lend money. The contract spoken of is one of loan : the parties to it are the bank, on one side, and the borrower and his co-obligors, on the other. To compel the reimbursement of the money borrowed, it provides a summary and prompt remedy in favour of one of the parties against the other. Where the money is lent on the credit of the borrower and his co-obligors, there is no difficulty in applying the law. But where he, who asks money from a bank, presents the note of another person to be discounted, a very material difference takes place in the nature of the contract. It is partly, as the defendant contends, a transfer or sale of his claim against the maker and the previous endorsers, and partly an obligation on his part to reimburse the money, if the maker does not pay. As applicant for money, under this promise of reimbursement, he perhaps might be considered so far in the light of borrower as to be liable himself to the mode of prosecution established against those who borrow from the banks, though we do not pretend to decide this *144 question ; but the maker, and the antecedent endorsers of the note, who are with respect to this application perfect strangers, surely ought not to be treated as borrowers. The violation of principles to which this mode of proceeding would lead, is too obvious ; and the injustice, hardship and vexation, with which it would be attended, are too glaring to require any com-comment.
Livermore for the plaintiff, Livingston for the defendants.
It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.*

 Martin, J did not join in this opinion, having some interest in the question.